

# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| GLORIA DENISE ATWATER and WILFRED LEE ATWATER, JR.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THOMAS SCHWARTZ and KIMBERLY SCHWARTZ,<br><br>    Defendants. | No. 2:18—CV-146 |

## ORDER

Before the Court are two Motions for Summary Judgment, dkt. nos. 56, 57, the first filed by both Defendants Thomas and Kimberly Schwartz and the second filed by Defendant Kimberly Schwartz only. The motions have been fully briefed and are ripe for review. For the reasons below, Defendants' joint Motion for Summary Judgment filed, dkt. no. 56, will be **DENIED** and Kimberly Schwartz's individual Motion for Summary Judgment, dkt. no. 57, will be **GRANTED**.

## BACKGROUND

This case arises out of an action by Plaintiffs Gloria and Wilfred Atwater alleging that Defendant Thomas Schwartz assaulted Gloria while she was helping Thomas complete errands in May 2018. At some time prior to the accident, Kimberly Schwartz had retained

Gloria through a third-party agency to act as a caretaker for Thomas, Kimberly's husband, who had allegedly been diagnosed with frontal lobe dementia. See Dkt. No. 20 ¶ 16; see also Dkt. No. 57-1 ¶¶ 10-12. In their pleading, Plaintiffs allege that Thomas had previously assaulted and/or battered at least one other caretaker but that Kimberly had failed to warn Gloria about Thomas's violent proclivities. See Dkt. No. 20 ¶¶ 16-18.

On the day of the incident, Plaintiffs allege that Gloria was driving Thomas to lunch when "suddenly and without warning" he began to strike Gloria on the head with a closed fist. Id. ¶ 9. Plaintiffs allege that Thomas then got out of the vehicle and went to a nearby restaurant where Gloria later found him. See id. ¶¶ 12–13. When she approached him, however, Thomas "began to strike and push" Gloria. Id. ¶ 14. As a result of these incidents, she contends she sustained significant and permanent physical and mental injuries. Id. ¶ 19. Gloria filed suit, along with her husband, asserting causes of action for assault and battery (Count I), negligence (Count II), infliction of emotional distress (Count III), loss of consortium (Count IV), and punitive damages (Count V). Id. ¶¶ 21—38.

In the first motion for summary judgment filed collectively by Thomas and Kimberly (the "Schwartz Motion"), Defendants seek to dismiss Counts I, III, and V on the basis that Thomas could not have formed the requisite malice or intent to commit the

2

allegations of assault, battery, or infliction of emotional distress because of his mental condition. Defendants argue that under Georgia law, an alleged tortfeasor's actions may not be considered intentional when he is too incapacitated to know, understand, or intend his actions. They reason that Thomas's frontal lobe dementia deprived him of the ability to understand right from wrong on the day of the incidents and therefore that he could not have maliciously harmed Plaintiffs. In the second motion for summary judgment filed by Kimberly Schwartz (the "Kimberly Motion"), Kimberly argues that the entire action against her should be dismissed because she owed no legal duty to Gloria on the day of the incident and therefore cannot be held liable to Gloria for the alleged actions of her husband.

In response to the Schwartz Motion, Plaintiffs argue that Thomas's alleged incompetence or incapacitation does not defeat their specific claims to relief under Georgia law. Alternatively, they contend that the parties dispute whether Thomas's dementia actually rendered him sufficiently incompetent to be unable to form the requisite intent for their claims. Moreover, as it concerns the Kimberly Motion, Plaintiffs argue both that Gloria had a special relationship with Kimberly by virtue of her employment as Thomas's caregiver that created a duty to Gloria and that Kimberly breached that duty by failing to warn her of Thomas's foreseeable assault.

3

As explained below, there is a dispute of fact as to whether Thomas was so incapacitated as to render him unable to form the requisite intent under Georgia law. However, the undisputed facts show that Kimberly Schwartz owed no legal duty to Gloria Atwater to prevent her injuries on the day of the incident. Thus, the Schwartz Motion will be **DENIED** but the Kimberly Motion will be **GRANTED**.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Investor Group.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this

4

burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan J. dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

The first issue concerns whether Thomas Schwartz's alleged dementia rendered him too incapacitated to form the requisite intent to commit the claims set forth in Counts I, III, and V. Though the parties vigorously dispute whether or the degree to which incapacity acts as a bar to these counts under Georgia law,

5

the Court need not reach this specific question because Defendants have failed to establish as a matter of law that Thomas was sufficiently incapacitated on the day of the accident.

In support of the Schwartz Motion, Defendants argue that an alleged tortfeasor cannot be considered to have acted intentionally where "he is unable to know, understand, and intend his actions." Dkt. No. 56-1 at 5 (citing State Farm Fire & Cas. Co. v. Morgan, 364 S.E.2d 62, 64 (Ga. 1987)). They point to testimony from Thomas's physician, Dr. Douglas Scharre, who opines that Thomas was of such a mental state that he did not have the capacity to understand what he was doing on the day of the incident. Plaintiffs, however, identify contrasting evidence, including that Thomas still legally played a role in his business, see Dkt. No. 57-4 at 15-18,[1] and that Thomas was able to make decisions for himself and carry on conversations with others, see Dkt. No. 62 at 3 (citing Dkt. No. 62–4 at 3-4 and Dkt. No. 62-5).

---

[1] Defendants challenge Plaintiffs' contention that Thomas was capable of running his business, arguing that this allegation was cherry-picked from Kimberly's deposition testimony and taken out of context. Defendants point out that, according to Kimberly's testimony, Thomas had not worked in his store since 2013 and 2014, that the day-to-day business is run by a power of attorney, and that Thomas's business-related decisions and rights were exercised with Kimberly's assistance. See Dkt. No. 68 at 5. Though this may be true, Kimberly's testimony does not clearly establish that Thomas has no role whatsoever in the business. To the contrary, she stated that Thomas still works at the business as "a consultant" and that he still has voting power within the company. Dkt. No. 57-4 at 15-18. Even these minor roles that Thomas allegedly plays in company operations would tend to belie the contention that he is so incapacitated that he cannot understand his own actions. This is not to suggest that these facts, when more fully fleshed out before a jury, would necessarily prove that Thomas could form the requisite intent on the day of the incident; rather, the record simply reveals a factual dispute concerning the degree of Thomas's incapacity.

6

Though the evidence Plaintiffs cite does not refute the existence of some mental deficits, it at least demonstrates an issue of fact with regard to whether Thomas was so incapacitated on the day of the incident that he was "unable to know, understand and intend" his actions. Morgan, 185 Ga. App. at 379.[2] Therefore, the Court cannot find, as a matter of law, that Plaintiffs' claims are barred by Thomas's mental deficits.[3]

As for the Kimberly Motion, Defendant Kimberly argues that Plaintiffs' action against her must be dismissed because Plaintiffs have failed to establish a duty to protect Gloria from injuries allegedly inflicted by Kimberly's husband. Plaintiffs concede that, as a general rule, a party has no duty under Georgia law to "control the conduct of third persons to prevent them from causing . . . harm to others." Houston v. Bedgood, 263 Ga. App. 139, 141 (2003) (quoting Shortnacy v. North Atlanta Internal Medicine, 252 Ga. App. 321, 325 (2001)). However, they argue that a duty nonetheless existed here under a special relationship

---

[2] Defendants argue, for the first time in their sursur reply, that Plaintiffs have not offered any expert testimony to rebut Defendants' expert. This is not necessary, however, to create an issue of fact where Plaintiffs have pointed to credible circumstantial evidence to suggest that Thomas was not so incapacitated on the day of the incident so as to defeat Plaintiffs' intentional tort claims. See Greater Hall Temple Church of God v. Southern Mutual Church Insurance Company, No. 20-10544, 20 WL 3989081, at *5 (11th Cir. July 15, 2020).

[3] This decision is not meant to suggest that a jury could not ultimately conclude that Thomas was legally incapacitated on the day of the incident. Rather, the Court simply finds that the evidence before it on the question of Thomas's incapacity is not such that it can reach a conclusion without the aid of a fact-finder. The Court leaves for another day the question of how, if at all, a jury should be instructed about incapacity and whether incapacity impacts intentional tort claims.

theory. Georgia courts have carved out two exceptions to the third-party duty rule, including where:

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Shortnacy, 252 Ga. App. at 325 (quoting Landis v. Rockdale County, 212 Ga. App. 700, 703 (1994) (quotation marks omitted)). Neither exception applies here.

Plaintiffs argue, under the first exception, that a special relationship existed between Kimberly and Thomas by virtue of "her employment as his full time caregiver." Dkt. No. 63 at 4. In support they rely on Bradley Center, Inc. v. Wessner, in which the Georgia Supreme Court found that a private medical hospital could be held liable for the murder of the appellee's mother by one of its patients. See 250 Ga. 199, 199, 202 (1982). There, the medical facility had released the patient under a weekend pass despite having learned that the patient would likely cause harm to appellee' wife. See id. at 200. The court held that despite the general rule that an individual has no duty to control the conduct of third persons, the facility could nonetheless be held liable under an exception where a party "takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled." Id. at 201-02 (quotations omitted).

8

Plaintiffs argue that, like in Bradley, Kimberly assumed control of her husband by becoming his caretaker and overseeing his day-to-day affairs. See Dkt. No. 63 at 4. Critical to the holding in Bradley, however, was that the facility had "authority to detain [the patient] from leaving for 48 hours while they attempt[ed] to persuade him to stay." Bradley, 250 Ga. at 199. Indeed, subsequent Georgia decisions have held that, under the Bradley ruling, a duty arises only where the defendant has "control" over the acting party. Trammel v. Bradberry, 256 Ga. App. 412, 416-17 (2002) (quoting Ermutlu v. McCorkle, 203 Ga. App. 335, 336 (1992)). Such control arises where the defendant obtains some form of legal guardianship over the actor or, alternatively, there is "evidence of actual assumption of physical control." See id. at 417; see also Houston, 263 Ga. App. at 142 ("[A]bsent legal authority in the physician to place restraints on the liberty of his patient, the duty to control does not arise.").

Here, there is no evidence that Kimberly acted as Thomas's legal guardian such that she could legally restrain him from taking some action, nor is there any evidence that she assumed complete physical control over Thomas. Rather, Plaintiffs simply point to evidence that Kimberly had say over Thomas's day-to-day schedule such that Gloria was not to do anything with Thomas "without checking with [her] first." Dkt. No. 63 at 4 (quotation omitted).

9

This, however, is far different from physical control over Thomas such that Kimberly could physically restrain his movements.[4]

Alternatively, Plaintiffs seemingly argue that the second exception to the third-party duty rule applies such that Kimberly owed a duty to protect Gloria by "inviting her into their home" and "requesting that she perform a service for the family." Dkt. No. 63 at 7. Plaintiffs cite to no authority, however, for the proposition that hiring someone to perform caretaking services automatically generates a duty to protect that person from harm. Nor does Plaintiffs' vague invocation of premises liability, by characterizing Gloria as an "invitee," have any bearing on this case given that no injuries are alleged to have occurred in or near Kimberly's home. Accordingly, the Court finds that Kimberly did not owe a duty to Gloria on the day of the accident in accordance with any special relationship theory.

## CONCLUSION

For the reasons above, the Schwartz Motion filed collectively by Defendants, dkt. no. 56, is **DENIED** and the Kimberly Motion filed solely by Defendant Kimberly Schwartz, dkt. no. 57, is **GRANTED.**

---

[4] Plaintiffs also seem to suggest that Thomas's dementia gave Kimberly de facto control over him "as a result of his diminished capabilities." Dkt. No. 63 at 4. Assuming, without deciding, that Thomas was so mentally deficient such that he *could* be controlled—a fact which seemingly contradicts Plaintiffs' position in Schwartz motion discussed above—this fact does not establish that Kimberly *did* in fact assume physical control over Thomas.

10

Defendant Kimberly Schwartz is hereby **DISMISSED** from this action. The case against Thomas Schwartz will proceed.

    **SO ORDERED**, this 2nd day of September, 2020.

                                            _____
                                            HON. LISA GODBEY WOOD, JUDGE
                                            UNITED STATES DISTRICT COURT
                                            SOUTHERN DISTRICT OF GEORGIA